This case is McNally v. Bumgarner for the appellant Mr. Cassidy and for the appellant Ms. Quinn. Thank you for your support counsel. I'm Drew Cassidy and I represent the appellant Dave McNally in this case. This is a case involving a motor vehicle accident with admitted liability and we're here today to review the trial court's judgment in favor of the defense. Specifically we're asking the court to review the court's finding that the plaintiff failed to meet his burden of proof in proving any injuries or damages as a result of the accident. We contend that the that finding that judgment is against the manifest way to the evidence and that the trial court improperly considered prior injury evidence in As I did in the brief I make a distinction between the claim for injuries and the claim for damages in this case. I'll begin with the damages as I believe it's the more succinct of the issues and yet I believe it is controlling of the requested relief to get a new trial. The plaintiff testified in this case that at the scene of the accident he became sore and stiff and that he accepted the offer of medical treatment from the investigating officer as soon as he was asked for it. He was then taken by ambulance on a backboard with cervical collar to the emergency room where he underwent a number of diagnostic studies and was diagnosed with a diagnosis of a back sprain. The medical bills associated with the ambulance ride and the emergency room treatment were stipulated into evidence by the defendant and totaled more than $3,000. Now the law in Illinois as stated by the Illinois Supreme Court and several districts of the appellate court is that where the plaintiff testifies to injuries and medical treatment the burden of going forward with the evidence shifts to the dependent. I want to discuss the Folletti versus Tracy case out of the first district as I believe it is most on point. In that case, similar to the admission of liability here, the court had taken the issue of liability away from the jury. There was a direct verdict on liability. The plaintiff testified to having sustained injuries in the accident and the medical treatment that followed. The defendant brought in medical expert testimony to challenge the reasonableness and necessity of some of the bills but not all of the bills. The court was returned in an amount that was less than the unchallenged portion of the medical bills. And while the court recognized that there was a sufficient basis to reject the medical treatment for the portion that the defendant offered medical testimony challenging them, there was no basis to ignore the medical bills that went unrebutted. We have a very similar factual situation here. The defendant's entire defense to whether or not there was injury at the scene was the fact that Mr. McNally would not speak to Mr. Bungarner, the defendant, at the scene. There was some testimony that he asked him several times, are you okay? Mr. McNally said just give me a minute, wouldn't speak to him. Gave an explanation for this, said he was quite angry, he had just been hit, his blood pressure was up, however you want to put it. Would not speak to him. He did not deny injury. Again, testified as asked by the officer, I accepted this. The defendant himself testified to having seen Mr. McNally holding his back and limping at the scene of the accident. So the defendant, other than this, offered no medical testimony whatsoever challenging the initial treatment at the emergency room or the ambulance. In fact, I would submit by stipulating to the admission of the bills, the defendant admitted the reasonableness and necessity of those bills. Who called for the ambulance? It was called in by the investigating officer who inquired of Mr. McNally who then said yes, I would like some treatment. So again, whereas the stipulation should resolve the necessity issue, but even absent that, there's simply no basis in this record for the court to have determined that the plaintiff sustained no damages whatsoever. Now, going further, Mr. Cassidy, could I interrupt you just for a moment? And I want to ask you, if there is an accident and liability is established either admitted or through the fact that there's determination, as long as an ambulance is called and care is rendered at the scene and the plaintiff automatically entitled to recover those damages. I mean, it seems to me that that's the gist of your argument here, that it just simply needs to be a finding as to liability and if there are ambulance or ER bills, treatment rendered for either, that plaintiff is entitled to receive compensation, notwithstanding that there might not be any medical testimony to the causation part of it. Your Honor, I don't think it is quite that cut and dry that in all cases they would be entitled to recover, but I would suggest it would be very difficult for them to not recover. What the case law provides is if the plaintiff renders testimony that he was injured as a result of the accident and to the medical treatment he received as a result of those, the burden of going forward with the evidence shifts to the defendant. At that point, it wasn't up for the plaintiff to bring in the medical testimony saying yes, there was evidence of injury in the accident. It is up to the defendant to come forward with medical testimony saying, look, there was no evidence of injury and we don't believe that these bills are reasonable or necessary as a result of this accident. And I'm sorry, which case was it that you cited too for that proposition? The one that I spoke of in detail is the Feletti, F-E-L-E-T-I-V-T-R-A-C-E 223 OF 31025 out of First District. The same rule of law stating that they've essentially established a prima facie case of injuries and damages is the Turner v. Chicago case out of the Illinois Supreme Court. And in those cases, there was no medical testimony linking the complaints at the scene or in the ER to the accident itself? That is correct. That's correct. In Feletti, they did come in defense-wise and challenge some of that. So the defendant did come forward to meet their burden of going forward. They simply didn't challenge all the bills. So when the verdict didn't at least cover the undisputed bills the plaintiff had testified to, then the court found it was against manifest way of the evidence and set the verdict aside. Similarly, with respect to the injuries, Your Honor, we have raised that there was clear evidence of two injuries sustained in the accident, a torn labrum in Mr. McNally's shoulder as well as an aggravation of condition of degenerative disc disease. In the interest of brevity, I'll just address the shoulder injury. We'll stand on our brief on the back injury part. With respect to the torn labrum in the shoulder, an orthopedist, Dr. Heron, testified that he diagnosed and performed surgery for that condition. And he expressly testified that it was his opinion that the injury was related to the basis of that being that it was consistent with the mechanism of injury described by the plaintiff. And that such an injury is always traumatically induced. This was corroborated by testimony of the plaintiff where he testified that yes, although I was in a prior accident, I did not have an injury to my right shoulder in that prior accident. And that he received no treatment for any injury to his right shoulder between the two. Testified then in the days following this by clicking in his shoulder, which led him to his primary care physician, which led to the referral to Dr. Heron, who then rendered the opinion. Again, the defendant presented no medical testimony whatsoever to rebut this testimony of Dr. Heron. In fact, we would suggest there's no substantive evidence whatsoever. What the defendant did was question Dr. Heron on cross-examination about a single sentence from an emergency room note from the prior accident. That emergency room note was never put into evidence. Those medical records aren't into evidence. We don't believe there's any substantive evidence whatsoever to argue this. But beside that point, even if we're to consider this emergency room note, it doesn't override the clear opinion of the doctor. Plaintiff, what the note basically said was that there was a, quote, spasm over the shoulder blade area. Bringing that to the attention of Dr. Heron, the defendant's counsel then elicited a response from Dr. Heron that, well, whichever accident traumatized the shoulder would be the one that caused the problem. Now, to the extent that that was meant to impeach Dr. Heron's testimony, there was no follow-up to that at all, or to impeach his opinion, it simply doesn't go nearly far enough. Defendant elicited no testimony that the exam note that he read evidenced a trauma to the shoulder. All he said was whichever one traumatized the shoulder, but they didn't say, is this evidence of trauma to the shoulder? Did not ask the question. Did not ask Dr. Heron if the shoulder blade area was the same as the shoulder. Did not ask Dr. Heron if the exam note with complaints of a spasm in the shoulder blade area was consistent with the symptom one would see with a torn labrum in the shoulder joint. Did not ask him if the exam note altered his causation opinion at all. Just simply never followed up on the note. And when we went back on redirect, plaintiff's counsel was able to that the plaintiff was treating for an injury to his right shoulder during the four weeks between the two accidents, then my opinion that it's the second accident must stand. There is no evidence. Plaintiff or defendant brought forth no evidence of any treatment to the shoulder. Now, in fact, they brought forth exactly the opposite. Elicited by defendant or read into the record upon questioning by defendant were the notes of the primary care physician during the intervening period. And those clearly established that there was no treatment to the shoulder and no shoulder complaints whatsoever. Again, we submit that the evidence was simply insufficient here. There simply was not enough evidence for that opinion of Dr. Heron to be ignored by the trial court or for the medical expenses associated with the initial hospitalization to be ignored by the trial court. We submit that plaintiff did meet his burden of proof, that the judgment of the trial court was against the manifest way of the evidence, and we would request it to be set aside. Mr. Cassidy, a question on that latter point. The trial court was the fact finder here and obviously had to make a determination as to the credibility to attach to Dr. Heron's opinions. The credibility of Dr. Heron's opinions would be premised on the validity of the basis for those opinions. Would it be within the trial court's discretion to discount Dr. Heron's opinion because the trial court did not believe that the second accident produced the injury, but that the mechanism involved in the first accident was more likely the mechanism that could result in this type of shoulder injury? Because Dr. Heron did talk about what the most likely mechanism would be for causing an injury of this sort. Is it discretionary with the trial court to make that determination as to which version, if you will, which accident is the more likely cause? Well, Your Honor, respectfully, I don't believe it was within the trial court's discretion under the facts of this case. And the way you worded the question at the end is the reason why. There wasn't two versions. The prior fact is to determine between conflicting evidence. And as we note in our brief, even though there's three doctors testifying, none of them contradicted each other. There was no conflicting evidence here. Dr. Heron said it was related. And what the case law says in the event of uncontroverted evidence is that the prior fact cannot simply ignore it unless it is simply implausible. And I don't believe there's any basis in this record to suggest that Dr. Heron's causation opinion was implausible. And therefore, we think it was improper, even as the prior fact, to simply ignore this causation testimony. Thank you. Throughout this appeal, Your Honor, Mr. McAlee has attempted to shift the argument that he should have come forth with medical expert testimony, basically to disprove Mr. McAlee's claims of injury. Mr. Bumgarner had no such obligation. Mr. Bumgarner made an improper, lame change in admitting negligence. It was then up to Mr. McAlee to prove proximate cause and damages, and he failed to do so. His own medical experts testified, all three of them, that the only basis upon which any of them could say that Mr. McAlee's medical conditions were related to the February accident was Mr. McAlee's say-so. And that includes Dr. Heron, the shoulder surgeon. At page 60 to 61 of his deposition, he testified that his basis for stating that the February accident was responsible for Mr. McAlee's shoulder tear was plaintiff's say-so. And plaintiff didn't even mention the January accident to him, nor did he tell Dr. Heron about that four-day delay between the accident and the onset of the symptoms in his shoulder. Testimony that is memorialized in plaintiff's deposition, and from which he backpedaled away in his trial testimony. And that four-day gap is important because Dr. Heron testified that whatever incident or accident seemed to traumatize the shoulder would cause plaintiff pain right away. It was not Mr. Bumgarner's burden to prove it was one thing or the other. It was up to plaintiff to he did not do that. As for plaintiff's claim that the trial court erred in considering portions of the deposition testimony that he himself admitted, that claim should be flatly rejected. It is very difficult to see why plaintiff should be permitted to have it both ways by offering evidence when it suits him and then attacking its consideration when it didn't turn out the way he wanted it to. I'd like to clear up something that was stated in the reply brief. Mr. McNally leads off by saying that diagnostic studies showed a traumatic herniation not present on films taken prior to the accident. And for that he cites to 323 to 324 of the record. That happens to be Dr. Williams' deposition. Dr. Williams gave two different depositions, one in 2009, one in 2012. The 2009 one appears twice in the record. So there's alternate places one could look for it, but they are both very edifying reading, Your Honors. Dr. Williams did not testify anywhere that the herniation in the disc in Plaintiff's neck was traumatic. Not anywhere, not in the Page's counsel sites or anywhere else in either of his two depositions. Dr. Williams explicitly diagnosed McNally's narrowing of the spinal canal and disc herniation as degenerative disc disease. And that diagnosis appears at C282 to 283. And if you're going by the Plaintiff's Exhibit 1 volume, it appears at pages 13 to 14. Later, in the 2012 deposition, Dr. Williams testified as follows. However, he says, the changes you see on the x-ray and the CTs and the MRI all appear to be chronic and predate the actual accident that he, McNally, described. There's no evidence of traumatic anything. That testimony appears at C253. Now that's why Dr. Williams, like all the other doctors, was careful to testify that while it is possible that the February accident caused some kind of symptoms to the plaintiff, it's also possible that it didn't. And for all three of them, the only evidence they have on that is McNally's word. Dr. Williams made clear that when McNally first began treatment with him back in May of 2007, he didn't tell him any of the symptoms were worse as a result of one accident or the other. And here's the case in a nutshell. At page 261, C261, Dr. Williams testified, there are, and I quote, no objective findings to support his objective, his, no, let me back up. No objective findings to support his There you have it, your honors. There is no objective medical evidence to support a thing McNally says happened to him. And the trial court plainly found that Mr. McNally was not credible. And that was important because it's just his word as to what happened to him. It's just his word and only his word as to whether he was thrown around inside his truck as a result of this minor collision. But the various inconsistencies between his deposition testimony on the one hand and his trial testimony on the other, and between the accounts he gave to various medical providers, and then the inconsistencies with his later trial testimony, all of that served to undermine his credibility. There are a number of examples we point out in our brief. Let me add one more. At his 2009 deposition, when Mr. McNally was asked whether Bumgarner's vehicle came up behind him or in front, he said, all I remember is the impact. I really don't know anything prior to the accident. That's at C85 at manuscript page 21. Three years later at his trial, he says, oh, I tried to prepare myself for the impact by throwing my arm up on the dash. That's just one example. There are many more in our brief. His word may be the only word on the subject of whether he was injured or how he took the impact, but the trial court is not required to believe testimony just because it is said, even if it's unrebutted. With respect to the ambulance ride, again, it comes back to credibility. You know, it fell to the trial court to determine who and what was worthy of belief here. And because the trial court found that Mr. McNally was not credible, it was not required to believe that he experienced any pain or symptoms as a result of this minor collision that would warrant a trip to the hospital in an ambulance. Well, did the trial court have the discretion to reach that conclusion, that Mr. Cassidy has pointed out that the certain case law that he indicates stands for the proposition that if the plaintiff testifies to his injuries in a situation like this, that it's then the defendant that has the burden of going forward with evidence that he in fact did not sustain injuries requiring that treatment. What do you say to that? Those cases appear to be about the reasonableness of the numbers that were given. They do not appear to be about the issue of proximate cause and whether the plaintiffs were injured in the first instance. We're back at that first step, whether it has been proven that the plaintiff was injured. Here, it was not proven. Well, sometimes an emergency room, going to the emergency room is necessary to determine whether there's been an injury. Isn't it? I mean, there's an accident, clearly. Admittedly, the vehicle's going 25 to 30, but it's a side swipe. What's so unreasonable about someone going to the emergency room under those conditions? He was out, he was walking around, minutes went by, he made a cell phone call, somebody else came up to talk to him, and it was only after that... You don't deny there are certain accidents where an injury doesn't necessarily manifest itself immediately. It's discovered either later at the emergency room or maybe even a day or two later. That can happen, but there was no such injury ever established here, Your recovery prior to the transportation to the emergency room. That's the case law. Counsel, I want to follow up with what Justice Turner indicated. Let's suppose you have a situation where you have a pregnant woman involved in a collision like this, no apparent outward injury involved, but certainly has a concern regarding the health of the fetus. Wouldn't any follow-up care in the studies done to determine the health of the fetus, and then eventually determine that the fetus was healthy, still be compensable? I would say that that case would be different because a pregnant woman, you have the seatbelts, and you actually have, out of an abundance of caution, you certainly probably would take such a plaintiff to the emergency room. In this case, there is no credible evidence of any injury. I'd cut you off before you answer Justice Turner's question about whether or not there's any case authority that would support your standpoint here, that there needs to be an established injury ultimately found before those emergency room bills could be compensable. Well, essentially, where counsel's logic would lead to, if you say you're pregnant, no matter what, you go to the emergency room, you're entitled to recover, whether you really needed to go or not, because they'll always ask you. Well, if you just got a small bruise on your arm, or you got a headache, or you got a scratch, I mean, how much of an injury? I'm just saying, in my view, common sense is when you've had an accident, if there's any question, it's expected that somebody would probably go to the emergency room just to make sure. Yeah, they probably would, but they don't necessarily need to go in an ambulance. These guys were out walking around in the intersection at first, and then they agreed to drive their cars into the parking lot to wait for the responding officers to come. The cars weren't damaged enough to be not drivable, and nobody was injured enough not to be walking around. In this case, Mr. McNally could have driven himself to the emergency room. He didn't need to go in the ambulance. That was a choice he made. And there's no reason why he should be compensated for the choice. So the officer had nothing to do with him deciding to take the ambulance? Well, of course the officer's going to offer. Well, the officer says, okay, it's your choice. You don't have to go. You can drive yourself to the emergency room, and then he blocks out the way to the emergency room. Then we got another lawsuit going. What about the ambulance crew? Is their input important here? What if at the scene they say, hey, if I were you, I'd get this checked out. I mean, you're putting the plaintiff in a bad spot by having to make a determination whether or not to take that ride. There is no evidence in this record about who offered him, I mean, really, there's no evidence about who offered him the ride in the ambulance, what the ambulance crew's input was. We can't determine that from this record. The Voigtlin case, I would submit, on which the plaintiff pretty much staked it all in his brief, has no application here. There, an adult plaintiff was cross-examined by a defendant during a jury trial about an interview he'd given to a physical therapist in which he There was no testimony about how long he'd suffered those injuries or when he'd last felt any symptoms from them. And then the document was introduced over the plaintiff's objection. Here we have a bench trial. There was no objection during the deposition to using Dr. Bonsall's and the ER medical records. We're talking about an incident that occurred, two incidents that occurred three weeks apart, so we don't have the concerns about remoteness or lack of specificity. And plaintiff introduced those depositions himself. And beyond that, the Voigtlin case gives the trial judge the discretion to determine that the nature of prior and current injuries are such that a lay juror can readily appraise the relationship between the two of them without expert assistance. Now, if the trial judge has the discretion to make that determination for lay jurors, it is really difficult to see how he would not have that discretion to make that determination for himself. And if he has that discretion, it is also difficult to see how it could have been abused in this case. On this record, Your Honors, it cannot be said that only an irrational fact finder would have come out the way the trial court did. And we would urge the court to refer the judgment below. Thank you. Mr. Kess. With all due respect to counsel, I think it is somewhat telling that the majority of argument focuses upon the injury, the claim of an aggravation to the preexisting injury. The one portion of the brief that I didn't argue and even conceded in the brief, there was some evidence to challenge that. But as we turn to the shoulder injury again, a single sentence which refers to a spasm in the shoulder blade a month earlier fits precisely into Voightkin. The argument that counsel is making suggests that you need to throw in one sentence that this person complained of pain in a different part of the body and ask the prior fact and simply speculate whether there is some connection. This isn't an issue of objecting at the time of admission. Counsel is failing to see the distinction in what we're arguing. They're certainly entitled to put in prior injury evidence. But under Voightkin, they have the obligation to tie it up. Either through the cross-examination of Dr. Heron or through bringing in their own medical testimony, they must say why it's relevant to the claim that was before the court. In this case, the torn labrum in the shoulder joint. There's absolutely no evidence by which this prior effect could have determined that the spasm in the shoulder blade area was evidence of the injury in the shoulder. And that's why we believe it was completely improper for the trial court to consider that prior injury evidence when defense failed to tie it up or tie up that cross-examination. And even if it is considered, as I've already argued, clearly doesn't overcome Dr. Heron's opinion, which he reaffirmed on his redirect examination based upon actual information as to what the treatment before the accident was. Now, I want to turn back to the damages issue. And counsel's argument does seem to be failing to make the distinction that I've made between injuries and damages on this case. If there's damages, the plaintiff is entitled to recover. The court's judgment, not granting the defendant the ability to meet the burden of proof, is against the manifest weight of the evidence, requires the entire judgment to be thrown out and a new trial to be ordered. Now, counsel seems to be suggesting that, well, it was just simply incredible that he took an ambulance ride. He should have driven himself. Well, not only would the defendant clearly be arguing that's evidence that he wasn't hurt and that he had more time to think about it and decide he was going to try to malinger into a case here, but the argument inherently says that the emergency room treatment's good. She's only complaining about the ambulance ride. So counsel seems to be making my argument that going to the emergency room was reasonable and an admittable liability case. That is damages should have been awarded by the court. I simply have to reject counsel's argument that suggesting that we are saying that the burden of proof shifted to the defendant. That is not our argument. There is a distinction between the shifting of the burden of proof and shifting of the burden of going forward with the evidence. And what the case law says is that Mr. McNally's testimony, in and of itself, that I was injured, I had pain, I was hurt, I went to the emergency room and here is the treatment I received, here are the charges I incurred  So it is not the plaintiff who did not meet their burden in this case. It is the defendant. Mr. Cassidy, with the burden shifting scenario here, I'm curious, what would then happen if you have a defense expert that comes in and says that what wasn't the case, that the services weren't reasonable and necessary given the circumstances or that the plaintiff suffered no injury? Because what we were talking about earlier with opposing counsel was, isn't it reasonable for a plaintiff who has been involved in an injury to try to find out whether or not he has been injured? And if ultimately it is found that there is no injury, then the defense expert or the defense medical here that comes in, it wouldn't necessarily be that that doctor would be saying there was no injury because ostensibly we'd still be finding that the plaintiff suffered damages. What would it be? Would it be defense testimony that the services were unreasonable and unnecessary? I believe it would have to be, Judge, and that is the very basis of the distinction I make between the injuries and damages. He could have gone to the emergency room or the pregnant woman go to the emergency room and get checked out and you're just fine. Those are damages without injury. Now, in this particular case, the burden of going forward to meet that burden, I frankly didn't look into it that far, but some expert would have to say, yes, the treatment at the emergency room, that it was neither reasonable to go to the hospital, it was not reasonable for the doctors to run these diagnostic tests, and they certainly were not necessary based upon the presenting complaints. We don't have that here. We don't have anything close to that. That's the burden the defense has to go forward with. And they simply didn't even try to meet it, much less actually meet it. So, again, we would request that the verdict or the judgment be set aside and that the plaintiff be awarded a new trial. Thank you, counsel. We'll take this matter under advisement and stand in recess until the readiness of the last case.